[Cite as *State v. Williams*, 2013-Ohio-5335.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

      Plaintiff-Appellant

v.

KATHRYN WILLIAMS

      Defendant-Appellee


Appellate Case No.    25651

Trial Court Case No.   JC 2011-9468


(Appeal from Juvenile Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 6th day of December, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by R. LYNN NOTHSTINE, Atty. Reg. No. 0061560, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellant

BRADLEY S. BALDWIN, Atty. Reg. No. 0070186, 854 East Franklin Street, Centerville, Ohio 45459
      Attorney for Defendant-Appellee

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1}  Plaintiff-Appellant, the State of Ohio, appeals from the February 7, 2013 decision of the juvenile court granting Defendant-Appellee, Kathryn Williams's  motion to dismiss one count of Failure to Report Child Abuse or Neglect under R.C. 2151.421(A)(1)(a). The juvenile court granted the dismissal on grounds of double jeopardy after it determined that the charged offense and the offense of Failure to Provide for a Functionally Impaired Person, of which Williams had been previously convicted, are allied offenses of similar import. The State argues that the dismissal was erroneous, because Williams's offenses are not allied offenses of similar import and do not implicate double jeopardy protections.

{¶ 2}  We conclude that the juvenile court erred in dismissing the charge of Failure to Report Child Abuse or Neglect.  Williams's previous conviction for Failure to Provide for a Functionally Impaired Person and her charge for Failure to Report Child Abuse or Neglect are not allied offenses of similar import, because each offense was predicated on separate conduct. As a result, double jeopardy protections are not implicated in this case, and a dismissal was not warranted on double jeopardy grounds. Accordingly, the judgment of the juvenile court will be reversed and vacated, and the matter will be remanded for proceedings consistent with this opinion.

### I. Facts and Course of Proceedings

{¶ 3}  On November 17, 2011, Kathryn Williams was indicted on one count of Failure to Provide for a Functionally Impaired Person, in violation of R.C. 2903.16(B) (recklessly), a felony of the fourth degree, and one count of Failure to Report Child Abuse or Neglect, in

violation of R.C. 2151.421(A)(1)(a), a misdemeanor of the first degree. Shortly thereafter, the Failure to Report Child Abuse or Neglect charge was nolled without prejudice and refiled in the Juvenile Division of the Montgomery County Court of Common Pleas. On April 11, 2012, Williams was re-indicted in the General Division on an additional count of Failure to Provide for a Functionally Impaired Person in violation of R.C. 2903.16(A) (knowingly), a felony of the fourth degree. Williams was, therefore, charged with two counts of Failure to Provide for a Functionally Impaired Person in the General Division, and one count of Failure to Report Child Abuse and Neglect in the Juvenile Division.

{¶ 4} After her indictment, Williams requested that the State furnish a Bill of Particulars, which set forth the nature of the indicted offenses and the alleged conduct that constituted the offenses. According to the Bill of Particulars, the charges against Williams were in connection with the death of 14-year-old Makayla Norman, "a lifelong mentally handicapped quadriplegic with cerebral palsy who could not stand, walk, talk or swallow food." Bill of Particulars (Apr. 12, 2012), Montgomery County Court of Common Pleas Case No. 2011-CR-3826/2, p. 3-4. Between April 30, 2010, and March 1, 2011, Williams, a licensed registered nurse, was charged with the responsibility of "personally physically assessing Makayla Norman every 30 to 60 days * * * in order to ensure both Makayla's health and safety * * *." *Id*. at 3. Williams was also charged with ensuring that Makayla's daily nurse and caretakers "were in compliance with Makayla's daily care plan." *Id*. Williams's last physical assessment of Makayla took place four days before Makayla's death. *Id*. Despite "several visible physical injuries and signs of neglect to Makayla," the State alleged that Williams "did not provide or seek out any treatment, care, goods or service" for Makayla, nor "report to local authorities." *Id.*

{¶ 5}    The State also alleged in its Bill of Particulars that Williams should have detected Makayla's injuries and neglect.  *Id*. at 4.  Makayla weighed only 28 pounds at her autopsy.  *Id.* at 3.   She had lice in her hair and eyebrows; unbandaged bed sores all over her body, some filled with feces and dirt; a two-inch impacted rectum; an interior pelvic area obstructed by a dilated colon filled with feces, which had begun to block one of her kidneys; plaque-covered teeth; a build up of thick, dry secretions on her tongue due to lack of oral care; and pneumonia in both of her lungs.  *Id.* at 3-4.  According to the State, Makayla's "cause of death was determined to be nutritional and medical neglect, with the death being contributed to by complications of cerebral palsy."  *Id*. at 4.

{¶ 6}    On September 14, 2012, Williams pled no contest to both counts of Failure to Provide for a Functionally Impaired Person.  The trial court found Williams guilty on both counts and sentenced her to a five-year term of community control sanctions.  After her conviction, Williams filed a motion to dismiss the Failure to Report Child Abuse or Neglect charge that was pending in the Juvenile Division.  Her motion to dismiss was based on grounds of double jeopardy.  Williams contended that her prior conviction for Failure to Provide for a Functionally Impaired Person barred her from being convicted for Failure to Report Child Abuse or Neglect, because the offenses are allied offenses of similar import.

{¶ 7}    On February 7, 2013, the juvenile court granted Williams's motion to dismiss on grounds that Williams's offenses are allied offenses of similar import.  Specifically, the court concluded that the State relied on the same conduct to prove each offense.  The court also stated that Williams's "Failure to Report Child Abuse and Neglect of Makayla Norman resulted in and

formed the predicate offense of Failure to Provide for a Functionally Impaired Person." Entry and Order Granting Motion to Dismiss (Feb. 7, 2013), Montgomery County Court of Common Pleas, Juvenile Division, Case No. JC 2011-9468, p. 6. Accordingly, the juvenile court dismissed the charge against Williams.

{¶ 8} The State appeals from the juvenile court's decision dismissing the charge of Failure to Report Child Abuse or Neglect.

## II. Did the Trial Court Err in Dismissing the Charge of
## Failure to Report Child Abuse and Neglect?

{¶ 9} The State's sole assignment of error is as follows:

The Juvenile Court Erred By Dismissing the Complaint Charging Kathryn Williams With Failure to Report Child Abuse and Neglect in Violation of R.C. 2151.421(A)(1)(a) on Double Jeopardy Grounds Where Prosecution of Williams for that Crime – Subsequent to Her Convictions for Failure to Provide for a Functionally Impaired Person in Violation of R.C. 2903.16 - Would Not Subject Her to Multiple Punishments, Nor Successive Prosecutions, for a Single Offense.

{¶ 10} Under this assignment of error, the State contends that the charge of Failure to Report Child Abuse and Neglect should not have been dismissed on double jeopardy grounds, because a conviction for that offense would not have resulted in Williams receiving a cumulative punishment or a successive prosecution for the same crime. In support of this assertion, the State contends that the offense of Failure to Report Child Abuse and Neglect and the offense of Failure to Provide for a Functionally Impaired Person are not allied offenses of similar import.

The State maintains that each offense was committed through separate conduct and with a separate animus.

{¶ 11}　Williams, on the other hand, claims that the juvenile court correctly determined that her offenses were allied offenses of similar import.　She argues that there are no instances of separate conduct, because each of her offenses are predicated upon her general failure to act between April 2010, and the date of Makayla's death.　In support of this argument, Williams claims that the language used in the State's Bill of Particulars and Sentencing Memorandum suggests that the offenses rest on the same conduct.　For example, the Bill of Particulars stated that, "the defendant did not provide or seek out any treatment, care, goods or services for (or report to local authorities)* * *."　Bill of Particulars p. 3.　The State's Sentencing Memorandum stated that "defendant* * * failed to follow up and/or act adequately on reports" and "defendant caused Makayla to suffer physical pain * * * by not calling authorities."　Sentencing Memorandum (Oct. 23, 2012), Montgomery County Common Pleas Court Case No. 2011-CR-3826/2, p.3-5.　Williams also contends that she did not have a separate animus for each offense, because she did not have an alternative motive in failing to act.

{¶ 12}　The Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution, contain the Double Jeopardy Clause, which " 'protects against a second prosecution for the same offense after acquittal or conviction, and against multiple punishments for the same offense.' "　*State v. Yeldell*, 2d Dist. Montgomery Nos. 25198, 25209, 2013-Ohio-1918, ¶ 5, quoting *State v. Sturgell*, 2d Dist. Darke No. 1751, 2009-Ohio-5628, ¶ 10. The protections of the Double Jeopardy Clause are codified in R.C. 2941.25, which states the following:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 13} "R.C. 2941.25(A) identifies two conditions necessary for merger: the offenses must (1) result from the 'same conduct' and (2) share a 'similar import.' " (Citation omitted.) *State v. Washington*, Slip Opinion No. 2013-Ohio-4982, ¶ 12. "Restated in the negative, offenses do not merge if they were 'committed separately' or if the offenses have a 'dissimilar import.' " *Id*., citing R.C. 2941.25.

{¶ 14} Per *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, R.C. 2941.25 "expressly instructs courts to consider the offenses at issue in light of the defendant's conduct." *Id.* at ¶ 46; *Washington*, Slip Opinion No. 2013-Ohio-4982, ¶ 17. "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other." (Citation omitted.) *Id*. at ¶ 48. "If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the

offenses are of similar import." *Id*.

**{¶ 15}** "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' " *Id.* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., Dissenting). "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Id.* at ¶ 50.

**{¶ 16}** "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." *Id*. at ¶ 51.

**{¶ 17}** In this case, Williams was convicted of Failure to Provide for a Functionally Impaired Person under R.C. 2903.16(A) and (B), and also charged with Failure to Report Child Abuse or Neglect under R.C. 2151.421(A)(1)(a).

**{¶ 18}** R.C. 2903.16(A) provides that:

> No caretaker shall knowingly fail to provide a functionally impaired person under the caretaker's care with any treatment, care, goods, or service that is necessary to maintain the health or safety of the functionally impaired person when this failure results in physical harm or serious physical harm to the functionally impaired person.[1]

---

[1] R.C. 2903.16(B) contains the same language as R.C. 2903.16(A), with the exception that it substitutes the mental state "knowingly" with "recklessly" and requires the functionally impaired person to suffer "serious physical harm," and not "physical harm."

{¶ 19} R.C. 2151.421(A)(1)(a) provides in relevant part that:

No person described in division (A)(1)(b) of this section who is acting in an official or professional capacity and knows, or has reasonable cause to suspect based on facts that would cause a reasonable person in a similar position to suspect, that a child under eighteen years of age or a mentally retarded, developmentally disabled, or physically impaired child under twenty-one years of age has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child shall fail to immediately report that knowledge or reasonable cause to suspect to the entity or persons specified in this division. * * * [T]he person making the report shall make it to the public children services agency or a municipal or county peace officer in the county in which the child resides or in which the abuse or neglect is occurring or has occurred. * * *.[2]

{¶ 20} In reviewing Williams's conduct, we note that she was a licensed registered nurse, charged with physically assessing Makayla Norman every 30 to 60 days to ensure Makayla's health and safety. Williams was also charged with ensuring that Makayla's caretakers were complying with her daily care plan. On February 25, 2011, Williams physically assessed Makayla, and despite several visible physical injuries and horrendous signs of neglect, Williams did not provide or obtain treatment for her. Williams also did not report Makayla's neglect to a public children services agency or a municipal or county peace officer. Four days

---

[2] Division (A)(1)(a) of R.C. 2151.421 applies to any person who is a "registered nurse; licensed practical nurse; visiting nurse; [or] other health care professional * * *." R.C. 2151.421(A)(1)(b).

later, Makayla died due to nutritional and medical neglect, and complications related to her cerebral palsy.

{¶ 21}   We disagree with the juvenile court's decision finding that the State relied on the same conduct to prove the offense of Failure to Report Child Abuse and Neglect and the offense of Failure to Provide for a Functionally Impaired Person.   In committing these offenses, Williams engaged in two distinct instances of failing to act.   One offense was committed by Williams's failure to obtain or render medical assistance, and the other was committed by her failure to report neglect to the appropriate authorities.   The failure to provide or obtain treatment and care does not also constitute the failure to make a statutorily mandated report.   Accordingly, the State did not rely on the same conduct when it indicted Williams for each offense.   Because the two offenses are predicated on separate conduct, they are not allied offenses of similar import.

{¶ 22}   In addition, we note that the incidental references to Williams's failure to report Makayla's neglect in the Bill of Particulars and Sentencing Memorandum, do not establish that the offense of Failing to Report Child Abuse and Neglect is encompassed by the offense of Failing to Provide for a Functionally Impaired Person.   This conclusion is supported by the fact that R.C. 2903.16 does not require a caretaker to make a report regarding abuse or neglect.   We would also like to point out that R.C. 2903.16 does not identify a predicate offense; therefore, the trial court's statement that Williams's violation of R.C. 2151.421 "resulted in and formed the predicate offense of Failure to Provide for a Functionally Impaired Person" was made in error.

{¶ 23}   Having determined that the Failure to Provide for a Functionally Impaired Person and the Failure to Report Child Abuse and Neglect are not allied offenses of similar import, we

conclude that Williams's charge in juvenile court for failing to report Makayla's neglect is not barred by the Double Jeopardy Clause and was improperly dismissed. Accordingly, the State's sole assignment of error is sustained.

### III. Conclusion

{¶ 24} The judgment of the juvenile court is reversed and vacated, and the matter is remanded for proceedings consistent with this opinion.

. . . . . . . . . . . . .

FAIN, P.J., and DONOVAN, J., concur.

Copies mailed to:

Mathias H. Heck
R. Lynn Nothstine
Bradley S. Baldwin
Hon. Anthony Capizzi